IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

LARRY ERVIN,                              *
                                          *
            Plaintiff,                    *
v.                                        *
                                          *
CAROLYN W. COLVIN, Acting                 *        No. 3:14CV00105-JJV
Commissioner, Social Security             *
Administration,                           *
                                          *
            Defendant.                    *

MEMORANDUM OPINION AND ORDER

Plaintiff, Larry Ervin, appeals the final decision of the Commissioner of the Social Security

Administration denying his claims for disability insurance benefits under Title II of the Social

Security Act and for supplemental security income benefits under Title XVI of the Act.  For reasons

set out below, the decision of the Commissioner is AFFIRMED.

I.      BACKGROUND

On March 8, 2011, Mr. Ervin protectively filed for benefits due to degenerative back disease,

neck problems, hearing problems, mental problems, leg and knee problems, depression, social

anxiety, and arthritis.  (Tr. 162)  His claims were denied initially and upon reconsideration.  At Mr.

Ervin's request, an Administrative Law Judge ("ALJ") held a hearing on September 4, 2012, where

Mr. Ervin appeared with his lawyer.  At the hearing, the ALJ heard testimony from Mr. Ervin and

a vocational expert ("VE").  (Tr. 30-66)

The ALJ issued a decision on February 22, 2013, finding that Mr. Ervin was not disabled

under the Act.  (Tr. 10-24)  The Appeals Council denied Mr. Ervin's request for review, making the

ALJ's decision the Commissioner's final decision. (Tr. 1-4)

Mr. Ervin, who was fifty-nine years old at the time of the hearing, has an eighth grade education and past relevant work as a concrete foreman, laborer, and carpenter. (Tr. 36, 46)

## II.    DECISION OF THE ADMINISTRATIVE LAW JUDGE[1]

The ALJ found that Mr. Ervin had not engaged in substantial gainful activity since December 14, 2009, and he had the following severe impairments: myalgia/myositis and degenerative disc disease. (Tr. 12)  However, the ALJ found that Mr. Ervin did not have an impairment or combination of impairments meeting or equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[2]  (Tr. 14)

According to the ALJ, Mr. Ervin has the residual functional capacity ("RFC") to do medium work.  (Tr. 14) Based on his RFC assessment and utilizing the services of a vocational expert, the ALJ concluded Mr. Ervin was capable of performing his past relevant work as a carpenter or construction foreman. (Tr. 23)  Accordingly, the ALJ concluded Mr. Ervin was not disabled.

## III.   ANALYSIS

### A.    Standard of Review

In reviewing the Commissioner's decision, this Court must determine whether there is

---

[1]The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy.  20 C.F.R. §§ 416.920(a)-(g) and 404.1520(a)-(g).

[2]20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926.

substantial evidence in the record as a whole to support the decision.[3]  Substantial evidence is "less than a preponderance, but sufficient for reasonable minds to find it adequate to support the decision."[4]

In reviewing the record as a whole, the Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision; but, the decision cannot be reversed "simply because some evidence may support the opposite conclusion."[5]

**B.      Mr. Ervin's Arguments for Reversal**

Mr. Ervin asserts that the Commissioner's decision should be reversed because it is not supported by substantial evidence.  Specifically, Mr. Ervin contends that the ALJ: (1) erred in classifying Mr. Ervin's past work as a "foreman"; (2) failed to present the VE with a hypothetical; (3) failed to consider his hernias and mental limitations in the RFC; and (4) erred by discounting Dr. Wilkins's opinion regarding light work.  (Doc. No. 13)

1.      Construction Foreman Definition

Mr. Ervin argues that the ALJ incorrectly classified his previous work as a foreman knowing that he "was not a foreman in the true sense of the word."  (*Id.*)  The Court agrees that the ALJ may have mislabeled Mr. Ervin's past work as a foreman as "light."  However, any error is harmless, since the ALJ also found that Mr. Ervin could do his past relevant work as a carpenter.

2.      Failure to Give Hypothetical

Mr. Ervin asserts that the ALJ erred by failing to give the VE a hypothetical question.  This

---

[3]*Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); 42 U.S.C. § 405(g).

[4]*Id*. (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)).

[5]*Id*. (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

argument is without merit, since the ALJ stopped his analysis at step 4 and was not required to obtain

testimony from the VE.[6]

        3.      RFC Determination

Mr. Ervin contends the ALJ erroneously failed to consider his hernias and mental limitations

in the RFC determination.   An ALJ is required to include nonsevere impairments in the RFC only

when there is evidence of limitations caused by the nonsevere impairments.[7]  After careful review

of the record, the Court finds there no evidence that Plaintiff's mental limitations impact his ability

to perform work related activities.  During a December 2009 psychiatric evaluation, the doctor noted

that "several red flags are apparent" regarding Mr. Ervin. He indicated that "the alleged injuries

seemed to exceed what would be expected from the nature of the accident that he describes."  (Tr.

274)  The doctor also noted that he "wonder[ed] about the sincerity of [Mr. Ervin's] reporting" and

"[o]bviously the presence of an alleged emotion disorder secondary to injury and disability would

improve his chances of receiving various compensation."  (*Id.*)  At follow up on January 27, 2010,

the doctor added that "exaggeration or malingering" could not be ruled out.  (Tr. 277)  In May 2011,

the doctor again questioned the authenticity of both Mr. Ervin's alleged psychological and physical

impairments.  (Tr. 263)  He noted that the "new report of symptoms coincides with his recent

application for disability."  (Tr. 263)  Additionally, Mr. Ervin testified that he is not longer taking

any medication for his alleged mental impairments. (Tr. 54)  Finally, he testified that he had no

---

[6]*Lewis v. Barnhart*, 353 F.3d 642, 648 (8th Cir. 2003) ("Vocational expert testimony is not required at step four where the claimant retains the burden of proving she cannot perform her prior work.").

[7]*Hilkemeyer v. Barnhart*, 380 F.3d 441, 447 (8th Cir. 2004).

trouble being around people.   In fact, at one job, he was the "foreman" responsible for communicating with and leading a group of co-workers. (Tr. 38-40, 61)  Based on the above, as well as other evidence, or lack thereof, in the record, the ALJ found that Mr. Ervin's alleged mental impairments were "mild" and correctly excluded them from the RFC.

Mr. Ervin also argues that he "has bilateral inguinal hernias [which] in and of itself would prevent [him] from lifting 50 pounds occasionally and 25 pounds frequently."  (Doc. No. 13) Notably, the record Mr. Ervin refers to lists the hernias as "past medical history" and in a different spot it is referred to as a "hernia repair." (Tr. 219, 338)  Additionally, this alleged impairment was mentioned neither on Mr. Irvin's disability report nor at the hearing. (Tr. 162)  Based on the record before the ALJ, the hernia issue appears to be resolved and does not cause limitations.

4.      Dr. Wilkins's Opinion

The ALJ had substantial evidence to conclude that Dr. Wilkins's opinion "contain[ed] inconsistencies" and was "rendered less persuasive." (Tr. 22)  The ALJ noted, "Dr. Wilkins seemed to limit the claimant to light level of physical exertion.  However, [Dr. Wilkins] also stated throughout the statement that there was no evidence of neurologic or functional compromise on physical examination during the encounter." (Tr. 22)  The record is replete with other evidence supporting the ALJ's findings.  For example, despite being referred to a neurologist, Mr. Ervin failed to follow up because he says he could not afford to go. (Tr. 273)  However, Mr. Ervin is a three-pack-a-day smoker. (Tr. 349)  Smoking is an expensive, ongoing habit that can be considered when weighing Mr. Ervin's credibility.[8]

---

[8]*Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999) (rejecting claimant's position that he could not afford medication when "there is no evidence to suggest that he sought any treatment offered to indigents or chose to forgo smoking three packs of cigarettes a day to help finance pain

The diagnostic tests also support the ALJ's conclusions.  A December 23, 2009, MRI revealed a normal thoracic spine other than mild degenerative disc desiccation at T5-T10.  (Tr. 241) Additionally, the ALJ recognized that Mr. Ervin has been prescribed nothing more than routine conservative treatment.[9]  Mr. Ervin's mental health physician noted that Plaintiff's alleged injuries appeared to be exaggerated and were inconsistent with his observations.  (Tr. 274)  In March 2011, Mr. Ervin reported no pain.  (Tr. 244)  Notes from April 2011, reveal that one doctor determined nothing was wrong with Mr. Ervin's back; he simply had "bad posture."  (Tr. 331)  A review of his back on October 6, 2011, was normal and there were no significant spasms.  (Tr. 325)  In 2012, muscle mass and strength of all extremities were considered good.  (Tr. 340)

The ALJ's credibility analysis was also proper.  A few examples: (1) Mr. Ervin told Dr. Wilkins that he used a cane, but records reveal no issues with gait or balance abnormality; (2) treating doctors believed Mr. Ervin might be malingering regarding his impairments; (3) Mr. Ervin stopped getting help for his alleged mental impairments and stopped taking other medications because he "do[esn't] like being bound to anything"[10]; and (4) Mr. Ervin has a long history of failure to comply with medications. (Tr. 265, 273 274, 277, 331, 334, 340)

While there may be some evidence that Mr. Ervin has limitations related to his impairments,

---

medication.").

[9]*Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) (finding that an ALJ may rely on the fact that a claimant has undergone only conservative treatment when evaluating the severity of the impairments).

[10]*Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir.2005) ("A failure to follow a recommended course of treatment . . . weighs against a claimant's credibility.").

the ALJ's finding that he could perform medium work is supported by the record.[11]

## IV.   CONCLUSION

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing, and the medical and other evidence.  There is sufficient evidence in the record as a whole to support the Commissioner's decision.

THEREFORE, the Court hereby affirms the final determination of the Commissioner and dismisses Plaintiff's Complaint with prejudice.

IT IS SO ORDERED this 12th day of December, 2014.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE

---

[11]*Davis v. Apfel*, 239 F.3d 962 (8th Cir. 2001) ("We may not reverse merely because substantial evidence also exists that would support a contrary outcome, or because we would have decided the case differently.").